## Commonwealth v. Peters.

*Husband and wife—Desertion—Divorce.*

1. Where a wife forges her husband's name to a note and negotiates the same; forges his name to checks and has them cashed; obtains his Liberty bonds and pledges them for a loan for her own use; contracts bills on her husband's credit after her husband has given her money monthly to pay all bills and rent for use of house, which accounts run over a period of two years: *Held,* that the wife could not maintain a proceeding for desertion and non-support.

2. Such acts rendered the husband's condition intolerable and life burdensome, and he was justified in withdrawing from the society and fellowship of his wife.

Petition for support. Q. S. Somerset Co., Dec. Sess., 1924, No. 69.

*Uhl & Ealy,* for prosecutrix; *Boose & Boose,* for defendant.

BERKEY, P. J., June 9, 1925.—The parties to this proceeding, James and Olive Peters, were married April 16, 1922, aged twenty-four and twenty-three, respectively. He was a miner and she a telephone operator. They went to housekeeping at once after marriage and cohabited until May 30, 1924, when the husband withdrew from the home. The husband, at the time of the marriage, had two Liberty Bonds of the par value of $500 each in the possession of the First National Bank of Rockwood, Pa., for safekeeping, and a deposit in that bank in cash of a considerable sum, to which he added his savings after marriage, so that when he separated from his wife his savings amounted to $2630; but meanwhile he had given the wife money to pay the house rent, money for clothing and for household necessities and comforts, amounting to $1020. The husband, the day of the separation, discovered she

had let the rent [remain] unpaid for several months, contracted bills among the town merchants, approximately between $400 and $500, and that by forging checks had withdrawn all his moneys in the bank account, forged a note on him, discounted at a Rockwood bank for $300, and by unexplained manipulations by and with the bank officials was enabled to make a loan, using the husband's Liberty Bonds as collateral, whereby she had dissipated the bonds.

The husband withdrew from the home the day he discovered her conduct in which she had engaged during the period of their married life.

On Oct. 14, 1924, she made information "that on and prior to the 30th day of May, 1924, deponent and James Peters lived together as husband and wife in the Borough of Rockwood, . . . and on said 30th day of May, 1924, the said James Peters without any reasonable cause left his said home and place of residence and deserted said deponent, and since said date has not contributed to her maintenance and support." The case was returned to this court by the justice of the peace before whom the proceeding was instituted and the parties heard.

This proceeding is under the Act of April 13, 1867, P. L. 78, which provides: "If any husband, . . . being within the limits of this Commonwealth, . . . shall separate himself from his wife . . . without reasonable cause," he shall "answer the charge of desertion."

This case may be considered from two viewpoints:

1. Assuming the husband deserted his wife without reasonable cause, the testimony shows she has illegally and wrongfully obtained about $3000 of her husband's money, the legal issues of which are $15 per month. She is a healthy young woman, without any children, capable of earning a fair salary at her business as a telephone operator. She has the *corpus* of her husband's estate and its earning power, which is sufficient for her support by him under the circumstances surrounding this case.

2. Viewing the case from the standpoint of the husband, that his separation from her was with reasonable cause, which relieves him from the obligation to give her support, what is the legal conclusion? The reasonable causes which justify a husband in quitting and abandoning his wife and which relieve him from maintaining her are such causes or reasons that would entitle him to a divorce: Sterling v. Com., 2 Grant, 162; Butler v. Butler, 1 Pars. Equity Cases, 329; May v. May, 62 Pa. 206; Howe v. Howe, 16 Pa. Superior Ct. 193; the Act of May 8, 1854, P. L. 644; Act of June 25, 1895, P. L. 308. The latter act, in section 3, provides: "Where a wife shall have by cruel and barbarous treatment or indignities to his person rendered the condition to her husband intolerable or life burdensome," such conduct by the wife entitles the husband to a divorce.

The acts or conduct of the wife towards her husband that will entitle the latter to a divorce under the clause of the statute now being considered must be not only such as render his condition intolerable or life burdensome, but such as amount to cruel and barbarous treatment. Both of these statutory elements must occur: Schulze v. Schulze, 33 Pa. Superior Ct. 325, 326; Fay v. Fay, 27 Pa. Superior Ct. 328; but it is sufficient that the wife's treatment of her husband renders his condition intolerable and life burdensome: Barnsdall v. Barnsdall, 171 Pa. 625, 631.

It has always been the rule in Pennsylvania that any unjustifiable conduct on the part of the husband or wife which so grievously wounds the mental feelings of the other or so utterly destroys the peace of mind of the other as seriously to impair the bodily health or endanger the life of the other, or which destroys the legitimate ends and objects of matrimony, constitutes

Commonwealth v. Peters.

cruelty, although no physical or personal violence may be inflicted or even threatened or reasonably apprehended: Russell v. Russell, 37 Pa. Superior Ct. 348; Yetter v. Yetter, 45 Pa. Superior Ct. 332, 335; Breene v. Breene, 76 Pa. Superior Ct. 568, 573.

Now, applying the law to the facts in the case at bar, what is the inevitable conclusion? The husband was twenty-three years old when married; a miner by occupation. He had a savings account and added thereto continuously. He made ample provision for necessaries and comforts of the wife, yet, meanwhile, during the two years and a month of their married life, the wife deceived him, forged his name to checks, refused to use the money he furnished her for payment of rent and household necessities and comforts as directed, but used his credit to purchase necessaries, rendering him penniless, with an addition of several hundred dollars of indebtedness. Such conduct brings the case within the ruling in Barnsdall v. Barnsdall, 171 Pa. 625, and other cases cited supra. "It is sufficient that the wife's treatment of her husband renders his condition intolerable and life burdensome." A state of domestic affairs is shown by the husband to entitle him to a divorce based upon reason and authority. The court, therefore, concludes the desertion of the husband was with reasonable cause and the wife has forfeited her claim and right to maintenance.

### Decree.

Now, June 9, 1925, for the reasons set forth in the foregoing opinion, the case is dismissed. No witness bills to be taxed and the record costs to be paid by the county.                    From P. G. Cober, Somerset, Pa.